UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **20-80062-CR**-Ruiz/Reinhart
18 U.S.C. § 1343

UNITED STATES OF AMERICA,

vs.

JOSE A. AMAN,

      Defendant.

_____/

FILED BY _____ **KJZ** ___ D.C.

**Aug 21, 2020**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information:

1.    Natural Diamonds Investment Co. (Natural Diamonds) was a Florida corporation with its principal place of business in Palm Beach, Florida. Natural Diamonds was purportedly in the business of buying and selling diamonds for retail and investment purposes.

2.    Eagle Financial Diamond Group Inc., a/k/a Diamante Atelier (Eagle) was a Florida corporation with its principal place of business in Palm Beach, Florida. Eagle was purportedly in the business of buying and selling diamonds for investment purposes.

3.    Argyle Coin, LLC (Argyle) was a Florida limited liability company, with its principal place of business in Palm Beach, Florida. Argyle was purportedly in the business of developing a cryptocurrency token backed by diamonds.

1

4.     The defendant, **JOSE A. AMAN**, was the President of Natural Diamonds, Vice president of Eagle, and President of Argyle, and a signatory on the Natural Diamonds, Eagle and Argyle bank accounts.   At most times relevant to the Information, Aman controlled the Natural Diamonds, Eagle and Argyle accounts and made all decisions regarding financial transactions on the accounts.

### COUNT 1
(18  US.C. § 1343: Wire Fraud)

5.     The General Allegations section is re-alleged and incorporated as though fully set forth herein.

6.     From in or about May 2014, and continuing through in or about May 2019, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant,

### JOSE A. AMAN,

did knowingly, and with intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

### PURPOSE OF THE SCHEME AND ARTIFICE TO DEFRAUD

7.     It was the purpose of the scheme and artifice to defraud for the defendant, **JOSE A. AMAN**, to unlawfully enrich himself by fraudulently inducing individuals to invest millions of dollars in rough diamonds, and then using the fraudulently obtained monies to benefit himself, pay expenses, and further the fraud.

2

## MANNER & MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The manner and means by which the defendant sought to accomplish the object of the scheme and artifice to defraud included, among others, the following:

8.     The defendant entered into a business arrangement with partners to market and sell diamond investment contracts to the public, through Natural Diamonds and Eagle. The defendant was purportedly responsible for selecting and purchasing the diamond parcels and reselling them for a profit, and the partners were responsible for marketing the investment contracts and meeting with investors.   The defendant and the partners held themselves out as experts in the diamond business.

9.     The defendant and the partners solicited individuals throughout the United States and Canada to invest in the diamond contracts.   The solicitations were primarily through a radio show hosted by one of the partners, telephone calls, and word of mouth.

10.     To induce individuals to invest, the defendant and the partners promised (a) to use investors' money to purchase rough colored diamonds, which the defendant would cut, polish and resell at a profit, (b) to secure the investments with the defendant's inventory of diamonds, purportedly valued at $25 million, and (c) to pay investors significant returns, with no risk.

11.     The defendant and the partners provided investors with written investment contracts which specified that the investments would take place over 24 or 18 months.   For the 24 month investments, the investors would receive 2 percent monthly interest payments for 24 months, followed by the return of the principal.   For the 18 month contracts, the investors would receive 100 percent returns, that is, double their initial investment, after 18 months.

12.     In some instances, the contracts specified that the investor was purchasing a "certain rough diamond parcel," which the contract described and, in many instances, valued.

3

For example, one such contract indicated that the parties were partnering to purchase "a multi-colored diamond parcel with a majority of green diamonds...valued at TWO MILLION ($2,000,000) USD." The physical descriptions of the diamonds were often false and the values were always greatly inflated.

13.    To make it appear as if the investments were risk free, the defendant and the partners often included Promissory Notes with the investment contracts, which provided that Natural Diamonds would guarantee the investments. The Promissory Notes were false in that Natural Diamonds lacked the funds to guarantee the investments.

14.    The defendant and the partners caused the investors to send their investment funds to Natural Diamonds or Eagle via interstate wire or check.

15.    Contrary to the representations made to investors, the defendant rarely used investors' money to purchase the rough diamonds referenced in the investment contracts; never cut, polished and resold any rough diamonds; did not have an inventory of diamonds valued at $25 million; and did not have the diamonds as described and valued in the contracts.

16.    To conceal the fraud from investors and create the appearance of legitimacy, the defendant made purported interest payments to the investors by using new investors' money to pay earlier investors. In some instances, the defendant used investment funds received from an Eagle investor to make purported interest payments to a Natural Diamonds investor. The defendant frequently commingled funds from the two companies and used whatever new money came into the companies to pay investors.

17.    At the end of the investment period, the defendant and the partners would induce the investors to roll over their investments. The defendant would falsely claim that the investor had the full value of his investment available to roll into a new investment and provided the investor with a "Re-Investment Contract." In truth, the Reinvestment Contract

4

was a sham as the defendant had already spent the investor's money and was simply trying to lull the investor and buy time to locate new investors and additional monies.

18.     When the scheme was about to collapse, the defendant set up Argyle Coin, LLC, which was purportedly in the business of developing a cryptocurrency token backed by diamonds. The defendant and a partner solicited new investors, as well as the existing Natural Diamond and Eagle investors to invest in Argyle.

19.     To induce individuals to invest in Argyle, the defendant claimed the investment would provide high rates of return with no risk because the investments were secured by $25 million in diamonds and an insurance bond. In truth, the defendant did not have $25 million in diamonds or valid insurance contracts securing the investments and used only a fraction of the investors' money to develop a cryptocurrency token. Instead, the defendant used the Argyle investors' money to pay purported interest payments to the Natural Diamonds and Eagle investors and to benefit himself and the partners.

20.     During the course of the scheme, which spanned from May 2014 through May 2019, the defendant and the partners collected approximately $30 million from investors, which money the defendant used to make purported interest payments to investors, to pay business expenses, to pay commissions to the partners, and to enrich himself and support his lavish lifestyle.

## USE OF THE WIRES

21.     On or about January 25, 2017, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendant,

### JOSE A. AMAN,

for the purposes of executing the aforesaid scheme and artifice to defraud and to obtain money and property from investors by means of materially false and fraudulent pretenses, representations and promises, did knowingly cause to be transmitted by means of wire

5

communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, that is, the defendant caused an investor (Victim 1) to wire transfer $200,000 from his Scotiabank account in Alberta, Canada, to the Eagle account ending in 2439, at Bank of America, in Lake Worth, Florida.

All in violation of Title 18, United States Code, Sections 1343 and 2.


ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY


ADRIENNE RABINOWITZ
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JOSE A. AMAN

_____ Defendant. _____/

CASE NO. **20-80062-CR-Ruiz/Reinhart**

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

| | | |
|---|---|---|
| New defendant(s) | Yes ____ | No ____ |
| Number of new defendants | | |
| Total number of counts | | |

**Court Division**: (Select One)

| | | |
|---|---|---|
| ___ Miami | ___ Key West | |
| FTL ✓ | ___ WPB | ___ FTP |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    No
   List language and/or dialect _____

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

| | (Check only one) | | (Check only one) | |
|---|---|---|---|---|
| I | 0 to 5 days | ✓ | Petty | |
| II | 6 to 10 days | | Minor | |
| III | 11 to 20 days | | Misdem. | |
| IV | 21 to 60 days | | Felony | ✓ |
| V | 61 days and over | | | |

6. Has this case previously been filed in this District Court?    (Yes or No)    No
   If yes: Judge _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?    Yes ____    No ✓

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    Yes ____    No ✓

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?    Yes ____    No ✓

ASSISTANT UNITED STATES ATTORNEY
ADRIENNE RABINOWITZ

*Penalty Sheet(s) attached

REV 6/5/2020

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**:   **JOSE A. AMAN**

Case No:   **20-80062-CR-Ruiz/Reinhart**

Count #: 1

**Wire Fraud**

**18 U.S.C. § 1343**

** **Max. Penalty**: Up to 20 years' imprisonment, 3 years' supervised release, $250,000 fine or twice the gross gain or loss resulting from the offense, whichever is greater, and restitution.

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER:   20-80062-CR-Ruiz/Reinhart

### BOND RECOMMENDATION

DEFENDANT: JOSE A. AMAN

$25,000 Personal Surety

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:   ADRIENNE RABINOWITZ

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   S/A William Johnson

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (OTHER)

FBI

AO 455 (Rev 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| JOSE A. AMAN | ) | **20-80062-CR-Ruiz/Reinhart** |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Kevin O'Reilly
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*