UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CR-80062-RAR

UNITED STATES OF AMERICA

vs.

JOSE A. AMAN,

    Defendant.
_____/

## ORDER DENYING EMERGENCY MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** comes before the Court on Defendant Jose A. Aman's *pro se* Emergency Motion for Compassionate Release (Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)) [ECF No. 41] ("Motion"), filed on August 29, 2022. On September 14, 2022, the United States filed a Response in Opposition [ECF No. 46] ("Response"). Having considered the parties' submissions, the record, and being otherwise fully advised, it is

**ORDERED AND ADJUDGED** that Defendant's Motion is **DENIED** as set forth herein.

## BACKGROUND

In August 2020, Defendant was charged with wire fraud, in violation of 18 U.S.C. § 1343 [ECF No. 1]. Defendant and his business partners solicited individuals throughout the United States and Canada to invest in contracts for diamonds, which Defendant promised he would cut, polish, and resell at a high profit. [ECF No. 14]. The contracts, however, were fraudulent and formed the basis of a Ponzi scheme that lasted from May 2014 through May 2019. *Id.* The scheme resulted in approximately $24 million in losses to over 200 victims. *Id.* On September 21, 2020, Defendant pleaded guilty as charged in the information. [ECF No. 11].

In August of 2019, nearly a year before Defendant was charged in this case, Defendant's adult son, Joseph Aman, experienced a horrific ATV accident in Virginia, resulting in severe brain

damage, a broken jaw, and myriad other complications which left him in a persistent vegetative state. [ECF No. 41–1] ("Exhibit 1") at 2–3. Defendant recounts in vivid detail the long hours over many days that he stayed by his son's bedside, advocating for him with medical providers, and aiding in his convalescence. *See generally* Mot. Joseph Aman was transferred to Woodbine Nursing Facility upon his discharge from the hospital. Ex.1 at 2. A court in Virginia appointed Christopher T. Mays, Esq. and Sandra Aman Wong, Defendant's sister, as co-guardians for Joseph Aman on October 27, 2021. *Id.* at 179–81. The exhibits accompanying Defendant's Motion demonstrate that since then, his sister, Ms. Wong, has taken an active role in overseeing, managing, and advocating for Joseph Aman. *Id*. at 184, 186.

At sentencing in December 2020, though Aman did not object to the guideline calculations, he did request a downward variance. [ECF No. 31] ("Sentencing Transcript") at 5–6. The government objected, citing several cases where similarly situated defendants received significant sentences. *Id.* at 6–9. The government acknowledged the difficult situation with Aman's son but argued it was not a sufficient reason to grant a downward variance. *Id.* at 7–9. The Court took note of Defendant's commitment to assisting with his son's care, but also noted the more than 240 people whom Defendant had defrauded out of many millions of dollars. *Id.* at 11. In denying the request for a downward variance, the Court explained that it could not look at the son's "accident, separate and apart from [the] Ponzi scheme, as a method by which to reduce the sentence . . ., because doing so would not promote respect for the law, given the seriousness of this offense." *Id.* at 31. To do so "would completely undercut any concept of general deterrence." *Id*.

After balancing the material considerations, the Court sentenced Defendant to 84 months of imprisonment, which fell toward the middle of the guideline range. *Id.* at 39. The Court also ordered three years of supervised release, imposed a $100 special assessment, and ordered Aman to pay $23,866,340 in restitution. *Id.* To accommodate Defendant's strong desire to remain near

the bedside of his recovering son, however, the Court extended Defendant's surrender date on three separate occasions. *Id.* at 40–42; [ECF Nos. 35, 37]. In August 2022, Defendant filed his approximately 50-page Motion, alleging multiple "extraordinary and compelling reasons" for compassionate release. *See generally* Mot.

## **LEGAL STANDARD**

A district court may modify a term of imprisonment "upon motion of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). The court may reduce the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A(i). Section 604 of the 2018 First Step Act expanded "who [could] file a §3582(c)(1)(A) motion" to allow for defendant-filed motions when previously, only the Bureau of Prisons ("BOP") could file them. *See United States v. Bryant*, 996 F.3d 1243, 1259 (11th Cir. 2021). However, Congress "chose not to lift its stricture that courts must follow the [Sentencing] Commission's applicable policy statements when ruling on [§ 3582(c)(1)(A) compassionate release] motions." *Id.*

In this Circuit, the categories for "extraordinary and compelling reasons" are spelled out in § 1B1.13 of the U.S.S.G. policy statement and are applicable to all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly. *Id.* As such, courts in this Circuit do not have discretion to develop their own interpretations of "extraordinary and compelling reasons" to justify a reduction in a defendant's sentence. *See id.* at 1248. Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist. *See United States v. Thompson*, No. 17-CR-60152, 2021 WL 5999422, at *3 (S.D. Fla. Dec. 20, 2021).

The Application Notes to § 1B1.13(1)(A) define extraordinary and compelling reasons warranting the reduction of a defendant's sentence: (1)(A) Medical Condition of the defendant;

(1)(B) Age of the defendant (at least 65 years old); 1(C) Family Circumstances; and 1(D) Other Reasons.  The Eleventh Circuit has made clear that the open-ended "Other Reasons" category in Application Note 1(D) is only available to the BOP in motions they file and cannot function as a catchall category for district courts to rely on when granting defendant-filed compassionate release motions.  *See Bryant*, 996 F.3d at 1262–65.

## ANALYSIS

Defendant alleges three main "extraordinary and compelling reasons" for compassionate release: (1) his "family circumstances" due to the medical incapacitation of his son; (2) COVID-19 and its possible impact on his own health were he to contract the virus; and (3) Defendant's rehabilitation.  Mot. at 41–46.[1]  The Court will address each in turn.

### i. *Defendant's Family Circumstances Related to His Son*

Application Note 1(C) of § 1B1.13 defines the family circumstances necessary for a court to entertain a motion for compassionate release.  Those circumstances include, "(i) the death or incapacitation of the caregiver of the defendant's minor child or minor children, or (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."  Here, Defendant's circumstances related to his son do not comport with the definition in section (i) and render section (ii) irrelevant.

Defendant's family circumstances do not fall under § 1B1.13 because Defendant's son is not a minor and his caregivers are not dead nor incapacitated.  Defendant argues that his son's

---

[1] The United States maintains that Defendant has failed to properly exhaust his administrative remedies—but the record is somewhat unclear as to this point.  Defendant attached the inmate grievance form he filed on July 8, 2022 requesting compassionate release, and the Warden appears to have signed it on July 13, 2022.  [ECF No. 41-2] ("Exhibit 2") at 2–3.  The Eleventh Circuit has held in a case with similar uncertainty in the record that assuming defendant "exhausted his administrative remedies. . . doesn't matter," because "the court did not err in ruling that he was ineligible for compassionate release."  *United States v. McCaslin*, 853 F. App'x 634, 635 (11th Cir. 2022).  Consequently, the Court will assume that Defendant has exhausted his administrative remedies and analyze his Motion on the merits.

persistent vegetative state renders him equivalent to a minor child in terms of the level of dependency and care required. Mot. at 42–43. But Defendant's son is not a minor, and as such, does not fit into the definition of Application Note 1(C). *See* Ex. 1 at 2 (medical record showing Joseph Aman's birth year as 1997, making him at least 24 years old at the time of the Motion). The Court is not at liberty to deviate from the text of the policy statement and rewrite the Application Note to accommodate Defendant. *See Bryant*, 996 F.3d at 1262 ("[D]istrict courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13.").

Alternatively, Defendant alleges that Ms. Wong, as well as the Woodbine Nursing Facility where Defendant's son currently resides, provide inferior care. Mot. at 3. But Defendant makes no showing that the primary caregivers in his son's life are either dead or incapacitated. Defendant cites one example where his son fell to the ground at the Woodbine facility and alleges that they provided substandard care. *Id.* at 33. But the attached documents in Defendant's Motion show a letter from the Virginia Division of Aging and Adult Services addressed to Ms. Wong reassuring her that after Joseph Aman's fall, the staff revised Joseph's care plan, sent him to have a CT scan, determined that "no injuries were found," and adjusted Joseph's program to ensure that staff would be placed with him "at all times." Ex. 1 at 184. Clearly, Joseph's caregivers are not incapacitated.

Defendant next alleges that his sister does not have time to adequately manage Joseph's care. Mot. at 3. Yet, Defendant's attached documents include a letter written by a law firm on behalf of Ms. Wong to the Woodbine Nursing Facility concerning Joseph's care and requesting that he be transferred to a facility in Florida, closer to where she lives. Ex. 1 at 186. This letter

demonstrates that far from being incapacitated, Joseph's legal guardian and caregiver is taking an active interest in managing his wellbeing.[2]

In sum, § 1B1.13 does not permit the Court to find that Defendant's family circumstances clear the "extraordinary and compelling" threshold set by § 3582(c)(1)(A).

### ii. Defendant's COVID-19 Concerns

Defendant's health concerns related to COVID-19 do not warrant compassionate release under § 3582(c)(1)(A) as defined by § 1B1.13. Defendant has not made a showing that he is "suffering from a terminal illness," or "suffering from a serious physical or medical condition." § 1B1.13 Appl. Notes (1)(A)(i)–(ii). The conditions presented by Defendant—abnormality of the cornea, allergies, intermittent asthma, benign prostatic hyperplasia, decreased vision in the left eye, dizziness, hypertension, low blood potassium, low hemoglobin, neck pain, numbness of fingers, pain in lower back, right knee pain, sleep apnea, and vision loss in right eye—are not terminal and do not present an end-of-life trajectory. Mot. at 2. And while asthma may increase complications due to COVID-19, Defendant has an inhaler to control his asthma. Ex. 1 at 9; *See United States v. Keys*, No. 20-CR-12318, 2021 WL 3012657, at *2-3 (11th Cir. July 16, 2021) (holding district court did not abuse its discretion when finding that medical conditions including asthma, poor circulation, and blood clots—which may have the potential for an increased risk of complications due to COVID-19—were not sufficiently severe to constitute an "extraordinary and compelling reason" within the meaning of § 1B1.13).

---

[2] Defendant provides numerous examples of the sustained and dedicated care that he provided to his son throughout his arduous recovery beginning in 2019. *See generally* Mot. The Court appreciates the unique care and advocacy that Defendant furnished his son throughout his recovery, which is why it granted Defendant two extensions of time before he had to surrender to begin serving his sentence. [ECF Nos. 35, 37]. More importantly, the Court carefully considered the factual circumstances recounted by Defendant in his Motion before and during sentencing.

Further and more troubling is Defendant's apparent refusal to receive the COVID-19 vaccine. [ECF Nos. 46, 48]. Defendant cannot come to this Court requesting a reduction in sentence due to medical conditions that he himself refuses to address through means provided to him by BOP Health Services. *See, e.g.*, *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 843–44 (D. Ariz. 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a COVID-19 vaccination weighs against a finding of extraordinary and compelling circumstances."); *United States v. Strother*, No. 4:17-CR-79, 2021 WL 2188136, at *8 (E.D. Tex. May 27, 2021) (inmate who declined vaccine "cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated"); *United States v. Milchin*, No. CR 17-00284-1, 2022 WL 196279, at *2 (E.D. Pa. Jan. 21, 2022) ("Even if Milchin's conditions did render him more vulnerable to COVID-19, his unexplained refusal to be vaccinated would defeat his compassionate release claim."). And to the extent Defendant requests relief based on generalized prison conditions related to COVID-19, these reasons do not represent extraordinary and compelling circumstances. *See United States v. Johnson*, No. 11-198-CR (HLA), 2021 WL 1597938, at *2 (M.D. Fla. Apr. 23, 2021) ("If such hardships constituted extraordinary and compelling reasons for a sentence reduction, nearly every federal inmate in the country would qualify for early release."). In sum, compassionate release on these grounds is wholly unwarranted.

### iii. *Defendant's Rehabilitation*

Defendant's final argument for compassionate release centers around his demonstrated record of rehabilitation in prison to date. Mot. at 45–46. The Court lauds Defendant's commitment to rehabilitation as noted in the letter from Principal Don M. Webb of the McRae Correction Facility describing Defendant as "nothing short of exceptional in his role as Education Tutor." Ex. 2 at 5. But rehabilitation is not covered in Application Notes 1(A)-(C), and the Eleventh

Circuit has held that 1(D)'s "Other Reasons" category is reserved for BOP-filed motions only. *See Bryant,* 996 F.3d at 1263. The defendant in *Bryant*, like Defendant here, also advanced an argument that his "good record of rehabilitation in prison" should qualify him for compassionate release under 1(D)—an argument the Eleventh Circuit squarely rejected. *Id.* at 1251, 1263–65. As such, the Court must similarly reject Defendant's position here.

### iv. *The Court Need Not Analyze the § 3553(a) Factors Here*

As Defendant has not cleared the § 3582(c)(1)(A)(i) threshold for "extraordinary and compelling reasons" to reduce his sentence, the Court need not analyze the 18 U.S.C § 3553(a) factors. Only when eligibility for compassionate release is established does a court have to determine whether "the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Bryant*, 996 F.3d at 1251 (quoting *Dillon v. United States*, 560 U.S. 817, 826 (2010)).

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant Jose A. Aman's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF No. 41] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 29th day of September, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record